UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LANCE MARTIN PARKS, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 14-cv-04193-NJV <br><br> **ORDER ON MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 23, 27 |

Plaintiff Lance Martin Parks seeks judicial review of an administrative law judge ("ALJ") decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income payments under Title XVI of the Act. AR 14-21. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. AR 5-10. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 9 & 10). The court therefore may decide the parties' motions for summary judgment. For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability, *id.* § 416.920(a)(3), and must use a five-step sequential evaluation to determine whether the claimant is disabled. *Id.* § 416.920. "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *See* AR. 16-21.

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id.* The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2006, his alleged onset date. AR. 16.

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433

F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: sciatica, degenerative disc disease, and headaches. AR 16.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. See 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv),(e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 17. Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several physical and environmental limitations. AR 17. The ALJ found that Plaintiff "can frequently climb ramps and stairs, balance, stoop, kneel, crouch; can occasional [sic] crawl and climb ladders, ropes and scaffolds; and can have no exposure to workplace hazards." *Id*.

At Step Four, the ALJ determined that Plaintiff was incapable of performing his past relevant work. AR 20.

At Step Five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. AR 21. Accordingly, the ALJ found Plaintiff was not disabled. *Id*.

## DISCUSSION

### Credibility of Plaintiff's Subjective Pain Testimony

Plaintiff contends that the ALJ erred in finding that Plaintiff's subjective pain testimony was not credible because the ALJ did not give clear and convincing reasons for that finding.

In addressing the credibility of Plaintiff's subjective testimony, the ALJ found as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The

3

> claimant is able to walk, drive and go to the park to listen to music. According to VA records, he is social p[sic] supported by local friends; and he is in 3 different bands, and plays the drums (Exhibit 4F/5). He does not take narcotic medications nor has he undergone injections for his pain, and in fact stated he takes over-the-counter medications for pain. Thus, the claimant has not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain. While he had difficulty with household chores and laundry due to back pain, he did need not [sic] use a cane or assistive device to ambulate. In addition, the undersigned accounted for his back pain in limiting him to light work, with frequently climb [sic] ramps and stairs, balance, stoop, kneel, crouch and occasional crawling and climbing ladders, ropes and scaffolds.

AR 18.

The Ninth Circuit has explained that an ALJ must follow a two-step analysis in evaluating the credibility of a claimant's testimony regarding subjective pain. *Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged....' *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009), as amended (citations and internal quotation marks omitted). Second, '[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection.' *Id*. (citation and internal quotation marks omitted)." *Chaudhry*, 688 F.3d .at 670-71.

As set forth above, the ALJ found that Plaintiff met the first part of the two-part test. The court finds that the ALJ then set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms, sufficient as to meet the standard set forth in *Chaudhry*. The ALJ found that Plaintiff's self-described daily activities did not support his claim of disabling impairments, noting that Plaintiff walked, drove, went to the park to listen to music, as well as played in 3 different bands. Everyday activities may be grounds for discrediting a claimant's testimony "to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Plaintiff's present arguments regarding the details concerning those activities, even if accepted, do not alter the nature of the activities substantially. In particular, while Plaintiff now argues that if asked, he

would have testified that he has not been able to play drums in a band since 2006, this assertion is contracted by the record. The Progress Notes from the Clearlake Clinic dated August 13, 2012, state in part "Local friends and support he's in 3 different bands. He plays the drums." AR 330. This directly belies Plaintiff's current argument that he has not been able to play in a band since 2006. After careful consideration, the court finds that ALJ's interpretation of Plaintiff's daily activities was rational and must therefore be upheld. *See Burch v. Barnhart*, 400 F.3d at 680-81("Although the evidence of Burch's daily activities may also admit of an interpretation more favorable to Burch, the ALJ's interpretation was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (internal citations omitted).

As Defendant argues and as the ALJ found, despite Plaintiff's claim of disabling back pain and headaches, the record reveals only minimal treatment, with an 11-year gap in treatment from 2001 until 2012. AR 18-19. *See Molina v. Astrue*, 674 F.3d at 1113 ("we have long held that, in assessing a claimant's credibility, the ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" quoting *Tommasetti*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Indeed, while Plaintiff alleged disability beginning in 2006 due to back problems, he did not seek treatment until six years later AR 152, 186. *See Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ properly discounted credibility based on the claimant's failure to seek treatment for his back injury for several months). The ALJ could reasonably find that Plaintiff's behavior was not consistent with that expected from someone in severe pain.

Plaintiff claims that he did not seek treatment until 2012 because he did not know that he was eligible for health benefits through the Veteran's Administration until 2012. While an ALJ may not penalize a claimant for not seeking treatment due to an inability to afford treatment, it is undisputed that Plaintiff did not explicitly testify that he did not seek treatment prior to 2012 because he was unable to afford it. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2008) (finding the claimant's failure to receive medical treatment during the period when he had no medical insurance could not support an adverse credibility finding, as disability benefits could not be

denied because the claimant could not afford treatment; distinguishing *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453 (9th Cir. 1995), which upheld an adverse credibility determination where the claimant received other medical care during the time she was allegedly unable to afford treatment and failed to mention her back pain).  Plaintiff worked as a plumber from 1996 through 2006 and sought treatment from 1998-2001, yet from 2001-2006, during a time when Plaintiff was working, there are no medical records.  *Id*. Although Plaintiff did not allege disability until 2006, it is reasonable to assume that he would have sought some type of treatment prior to the date he claims his impairments became so severe they prevented him from working.  The court rejects Plaintiff's argument that the ALJ discouraged Plaintiff from submitting medical records from the time period of 2001-2006.  When the exchange is taken in context, it is clear that the ALJ was communicating she did not need Plaintiff's Kaiser medical records from the 1990s, because he was alleging disability starting in 2006.  AR 508-511.  Additionally, the ALJ explained to Plaintiff how to submit additional medical records, even going so far as to give him a prepaid envelope.  AR 511.  Although the hearing before the ALJ was held on August 8, 2013, the ALJ's decision was not issued until November 8, 2013, some three months later.  AR 500, 21.  It is clear from the exchange at the end of the hearing that Plaintiff realized that he could provide additional records to the ALJ.  AR 529.

The records from 2012, six years after his alleged onset date, when Plaintiff first received treatment, revealed minimal findings.  Dr. Benrazavi's 2012 examination revealed only minimal objective findings, and he opined that Plaintiff could perform a range of medium work.  In addition, as late as 2013,  Dr. Andrus reported that Plaintiff took no medications for his pain.  AR 283,338.  Furthermore, despite his complaints of severely disabling pain from 2006 through 2012, there is no indication that Plaintiff sought treatment from any health clinics.  While Plaintiff also argues that he was prescribed Gabapentin and Baclofen for pain symptoms, it is undisputed that Plaintiff did not take narcotic pain medication, and the ALJ properly considered that fact and the fact that Plaintiff did not receive any pain injections . Finally, the ALJ also considered Plaintiff's April 2013 neurosurgery referral, but as the ALJ properly pointed out, Plaintiff's treatment for his back thus far has been conservative.  AR 19.  The record shows that if Plaintiff was not a surgical

candidate, the next step would be referral for steroid injections AR 494.  Plaintiff has not had pain injections or surgery, and his treatment thus far has been conservative.

The court finds that the ALJ set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms.

**Weight Given to Opinions of Treating Physicians**

Plaintiff contends that the ALJ erred in finding that the treating physicians' opinion should be given little weight, because the ALJ did not state reasons for that decision which are supported by substantial evidence.

The ALJ considered the opinions of two treating physicians:  Dr. Liza Ashbrook and Dr. Andrus.  The record contained an April 2013 Lumbar Spine Medical Source Statement completed by Dr. Ashbrook from the VA Medical Center in San Francisco. AR 388-391, Exhibit 6F.  Dr. Ashbrook noted in the Statement that she had seen Plaintiff once previously, in February 2013.  *Id*.  She diagnosed Plaintiff with low back pain with radiation, likely due to degenerative disc disease.  *Id*.  She identified Plaintiff's symptoms as, "[p]ain causing sleep impairment and fatigue."  *Id*.  She noted that the "[p]ain limits ability to sit, bend over, headache."  *Id*.  She opined that Plaintiff could sit for about 4 hours in an 8-hour day' stand/walk for less than 2 hours in an 8-hour day; had to shift positions at will; could frequently lift less than 10 pounds, occasionally twist, rarely climb, crouch or squat, and never stoop; and that he would miss more than 4 days of work per month.  AR 388-91.

The other treating physician, Dr. Andrus, wrote a letter dated January 18, 2013, and reported that he had seen Plaintiff twice since August of 2012 for chronic low back pain for which Plaintiff took no medication.  AR 338.  Dr. Andrus opined that Plaintiff could stand for about 25 minutes, had to change positions frequently, and could ride in a car for approximately an hour and a half before needing to get out and stretch.  *Id*.  He further opined that Plaintiff could not return to his usual employment as a plumber because he could no longer stoop and lift as required in that job.  *Id*.

The ALJ assigned little weight to the assessments of these two treating physicians, explaining as follows:

7

> These opinions are without substantial support from the other evidence of record, which obviously renders them less persuasive. The record shows treatment that is essentially conservative in nature and does not support the extreme limitations advocated, such as absences from work more than four times per month. Indeed, Dr. Andrus stated that claimant does not take pain medication for his severe back pain. Both doctors only saw the claimant for two visits. Thus, while the doctors do have a treating relationship with the claimant, the treatment history is quite brief.

AR 19-20.

The ALJ reasonably accorded little weight to the opinions of the treating physicians. As she pointed out, the evidence of record did not support the extreme limitations assessed. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) (treating physician may be discredited if it is unsupported by the record as a whole or by objective medical findings) (citations omitted). Despite alleging disability since 2006, Plaintiff's records consist of treatment in the 1990's and 2001, with no further treatment until 2012. In addition, as discussed above, Plaintiff's treatment had essentially been conservative in nature. On February 25, 2013, after reviewing Plaintiff's imaging, Dr. Andrus said Plaintiff had degenerative disc disease and that there was no change in his treatment approach which included stretches, physical therapy, and a transcutaneous electrical nerve stimulation (TENS) unit. AR 19, 450. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly noted that the doctor prescribed only "conservative treatment," suggesting a "lower level of both pain and functional limitation"). Dr. Andrus stated in his January 2013 letter that Plaintiff was not taking any medication, and on February 22, 2013, Plaintiff reported that he was only taking ibuprofen for his back pain. AR 338, 451. Additionally, while Plaintiff had some abnormal objective examination findings, Plaintiff's records from February and April 2013 reveal that he had a normal gait, normal bulk and muscle tone, and normal reflexes. AR 446, 452-53. These findings do not support the significant limitations Dr. Andrus and Dr. Ashbrook assessed. *See* 20 C.F.R. § 404.1527(c)(6) (When deciding how much weight to give a medical opinion, factors which tend to support or contradict the opinion are considered).

Further, as the ALJ pointed out, Dr. Andrus and Dr. Ashbrook only saw Plaintiff two times each, and thus they did not have the opportunity to establish any kind of ongoing relationship with Plaintiff. AR 19-20. Treating physician opinions are generally accorded more weight since these

8

sources are likely able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c)(2) (Generally, more weight is given to treating source opinions since these sources are likely able to provide a detailed, longitudinal picture of your medical impairment). Because Plaintiff only saw these physicians twice before they provided their opinions, the ALJ properly considered this factor, along with Plaintiff's conservative treatment, the lack of support from the other medical records, and the inconsistency with the other medical opinions of record, in according them little weight. AR 19-20. *See* 20 C.F.R. § 404.1527(c)(2) (The length of the treating relationship and frequency of examination are factors to consider to determine the weight given to a source); *Tommasetti v. Astrue*, 533 F.3d at 1041 (noting the physician's conclusions on the completed questionnaire regarding the claimant's ability to stand and sit "did not mesh with her objective data or history," was unsupported by her medical records, and that the incongruity between the physician's questionnaire responses and her medical records constituted a specific and legitimate reason to reject her opinion); *Batson*, 359 F.3d at 1195 (treating physician may be discredited if it is unsupported by the record as a whole or by objective medical findings) (citations omitted).

After considering the record and the medical opinions of record, the ALJ properly resolved the conflict in the opinions of record and accorded greater weight to the opinions of Drs. Benrazavi, Dipsia, and Hanna. *Andrews*, 53 F.3d at 1041 (citation omitted) (When a treating physician's opinion is contradicted by the opinion of a nontreating source that is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may be substantial evidence, and it is "solely the province of the ALJ to resolve the conflict."); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (The ALJ did not abuse his discretion in rejecting the treating physician's opinion and primarily relying on the findings of a medical consultant, as findings of a nonexamining physician can amount to substantial evidence if supported by other evidence in the record). Here, the ALJ properly evaluated the medical evidence of record and accorded weight to those portions of the opinions supported by the objective medical record in determining Plaintiff's RFC. *See Bayliss v.Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (In making his RFC determination, the ALJ permissibly took into account those limitations

for which there was record support that did not depend on the claimant's subjective complaints). The ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld"). As the ALJ's finding is supported by substantial evidence in the record, it should be upheld. *See* 42 U.S.C. § 405(g) (if an ALJ's finding as to any fact is supported by substantial evidence, it shall be conclusive).

**Credibility of Third Party Statements**

Plaintiff contends that the ALJ erred in finding that statements by third parties had little credibility.

The court rejects Plaintiff's contention that the ALJ did not properly evaluate the third party statements. In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Here, the ALJ did consider the third party statements, finding that they were based on casual observation and potentially influenced by the relationship of the third parties with Plaintiff. The ALJ explained that she accorded the statements little credibility because they were inconsistent with the medical evidence of record. AR 18. Specifically, the ALJ stated that the statements did not outweigh the accumulated medical evidence regarding the extent to which Plaintiff's impairments limited his functional abilities, and which revealed generally routine and conservative treatment for back pain. AR 18. Inconsistency with medical evidence is a "germane reason" for discrediting lay witness testimony. *Bayliss*, 427 F.3d at 1218. Moreover, to the extent that the third party reports revealed difficulties with lifting, bending, and kneeling, the ALJ properly included such limitations as supported by the objective medical evidence in her RFC finding. *Id.* at 1218 (ALJ properly "accepted the testimony of [the claimant's] family and friends that was consistent with the record of [the claimant's] activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard"). Thus, contrary to Plaintiff's argument, the ALJ properly evaluated the third party statements. The court finds no error.

//

**ALJ's Obligation to Fully Develop the Administrative Record**

The Plaintiff contends that the ALJ failed to fulfill her obligation to fully develop the administrative record.

The ALJ has a duty to fully and fairly develop the record and assure the claimant's interests are considered, and the ALJ must be especially diligent in exploring for all the relevant facts when a claimant is unrepresented. *Tonapetyan*, F242 F.3d at 1150. An ALJ's duty to develop the record is triggered when the record evidence is vague or ambiguous, but when the record allows the ALJ to evaluate the evidence and make a disability determination, the ALJ is under no obligation to further develop the record. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (An ALJ's duty to further develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Plaintiff argues that the ALJ should have questioned Plaintiff further about his failure to seek treatment prior to 2012, whether he had been offered narcotic medications, and why he was not taking them. However, it was through the ALJ's questioning that the ALJ discovered that Plaintiff began receiving medical benefits from the military after learning he was eligible, and she considered his testimony with the other evidence of record which revealed no treatment for the five years prior to his alleged onset date, minimal objective findings, and conservative treatment. AR 522. With respect to his medications, the ALJ specifically asked Plaintiff what medications he was taking and properly noted that he had not gotten any injections, nor was he taking (or state that he was prescribed) any narcotic medications. AR 245, 522-24. Plaintiff also argues that the ALJ should have asked Plaintiff more specific questions about his daily activities, such as how long it took him to drive to specific places and about the notation in the record regarding his playing in a band. However, the ALJ elicited Plaintiff's testimony that he drove 15 to 20 minutes a week, and she did not need to know exactly how long it took Plaintiff to get to each and every place he drove, nor was she required to ask him about every notation in the record regarding his activities. Moreover, this was only one of various activities the ALJ noted that Plaintiff participated in, and his daily activities was also one of many reasons the ALJ provided for finding

11

him not fully credible. In addition, as discussed above, the ALJ tried to ensure that she had all of Plaintiff's medical records at the hearing. AR 508-12. The court therefore finds that Plaintiff's argument that the ALJ should have questioned Plaintiff further lacks merit. *See Tonapetyan*, 242 F.3d at 1148 ("There is no merit in [the claimant's] contention that the ALJ should have given her a chance, while at the hearing, to explain the inconsistent statements and other factors that led him to find her not credible.").

Contrary to Plaintiff's argument, the ALJ properly questioned Plaintiff during the hearing. The record was neither vague nor ambiguous, the ALJ was able to make a disability determination on the record, and she had no duty to further develop the record. *See Mayes*, 276 F.3d at 459-60. Plaintiff bears the burden to provide evidence to support his claim for disability, and he has failed to do so in this case. *See* 42 U.S.C. § 423(d)(5)(A).

**ALJ's Reliance on Grids**

At step five of the sequential evaluation process, the burden shifts to the Commissioner to show that considering the claimant's age, education, work experience, and RFC, the claimant can adjust to other work. *See* 20 C.F.R. § 404.1520. The Commissioner can meet her step five burden by using the testimony of a vocational expert or by referencing the Grids. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

Plaintiff's contention that the ALJ was required to ask the vocational expert whether jobs existed in significant numbers in the national economy that a hypothetical individual such as Plaintiff could perform is without merit. The Ninth Circuit has specifically found that the Commissioner can meet her step five burden by using a vocational expert or the Grids. *Osenbrock*, 240 F.3d at 1162. A vocational expert is only required when there are "significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid," which significantly limits the range of work permitted by the individual's exertional limitation. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir.2007) (citation omitted). In this case, the ALJ found that Plaintiff had the RFC to perform light work and frequently climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl and climb ladders, ropes, and scaffolds; and should have no exposure to workplace hazards. AR 17. As the ALJ explained, the additional non-exertional limitations

had little or no effect on the occupational base of unskilled light work. AR 21. *See* SSR 83-14 ("Relatively few jobs in the national economy require ascending or descending ladders and scaffolding," and the inability to ascend or descend scaffolding, poles, or ropes has very little or no effect on the unskilled light occupational base; A person would not need to crouch and would only need to stoop occasionally to perform substantially all of the exertional requirements of most sedentary and light jobs); SSR 85-15 (noting that stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, and if a person can stoop occasionally, the sedentary and light occupational bases are "virtually intact."). Because the ALJ determined that Plaintiff's non-exertional limitations had little or no effect on the occupational base of unskilled light work, she could properly rely on the Grids. *See Hoopai*, 499 F.3d at 1076 ("[A] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid"). Although Plaintiff claims that he has other non-exertional limitations, he is again contesting the ALJ's RFC finding and evaluation of the medical and subjective testimony evidence. The court has already addressed and rejected Plaintiff's arguments on those matters.

The court finds no error in the ALJ's reliance on the Grids in finding Plaintiff not disabled AR 21. *See Hoopai*, 499 F.3d at 1076.

## CONCLUSION

Based on the foregoing, the court concludes that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. Accordingly, the court finds no reversible error and the Acting Commissioner's request for summary judgment is GRANTED and Plaintiff's request for summary judgment is DENIED.

A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: February 23, 2016

NANDOR J. VADAS
United States Magistrate Judge